Tammy Conway IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TAMMY CONWAY, individually, and as Special Administrator of the Estate of DAVID CONWAY, deceased, <br><br> Plaintiff, <br><br> v. <br><br> ADRIAN CARRIERS, LLC <br>    Serve Registered Agent: <br>    EDWARD D. MCNAMARA, JR <br>    931 S. 4TH STREET <br>    SPRINGFIELD IL, 62705 <br><br> and <br><br> GREGORY LEE HORNE <br>    Serve at: <br>    218 Tamarack <br>    Morton, IL 61550 <br><br> Defendants. | Cause No: <br><br><br><br><br><br><br><br><br><br> Personal Injury - Vehicular <br><br> JURY TRIAL DEMANDED <br> ON ALL COUNTS |

## COMPLAINT

The Plaintiff, Tammy Conway, individually and as Special Administrator of the Estate of David Conway, deceased, by and through her attorneys, Page Law, LLC, complains of the Defendants, Adrian Carriers, LLC, a corporation, (hereafter "Adrian") and Gregory Lee Horne, (hereafter "Horne"), states as follows:

### I.
### *PARTIES*

1. At all times relevant hereto, TAMMY CONWAY, was the wife of David Conway, deceased.

2. At all times relevant hereto, TAMMY CONWAY, was/is a citizen and resident of Missouri.

3. Plaintiff brings this action on her own behalf and on behalf of the next of kin, having been appointed Special Administrator on October 8, 2015. See Order For Petition For Formal Appointment of Special Administrator, attached hereto as Plaintiff's Exhibit 1.

4. David Conway, deceased, left surviving his wife, Tammy Conway, and four minor children, CC, DC, MC, and VM, all of whom are residents of Missouri, and all of whom are his next of kin.

5. At all times relevant hereto, David Conway, deceased, was a resident of Missouri, when he was killed while operating a tractor trailer for a Missouri trucking company, in a crash that occurred in Illinois on August 24, 2015.

6. The tractor trailer crash and David Conway's death were both caused by the acts and/or omissions of Adrian and its agents, servants, and/or employees, including Horne.

7. Plaintiffs are all citizens of the State of Missouri.

8. Adrian is a Delaware Corporation with its principal place of business in Walcott, IA.

9. Adrian can be served through its registered agent Edward D. McNamara, Jr. at 931 S. 4th Street, Springfield, IL 62705.

10. At all times relevant hereto, Adrian engaged in the business of interstate trucking as a commercial motor carrier across the United States, including throughout the State of Illinois.

11. Horne is a resident of Illinois, residing at 218 Tamarack, Morton, IL 61550, and can be served at that address.

## II.

## *JURISDICTION*

12. This Court has jurisdiction over the subject matter of this lawsuit on the grounds of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

13. The Plaintiffs are citizens of the State of Missouri, Defendant Adrian is a citizen of Delaware, and Defendant Horne is a citizen of Illinois.

14. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

## III.

## *VENUE*

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

16. Adrian has operating authority and operates as a commercial motor carrier throughout Illinois, including in the Southern District.

## IV.

## **GENERAL ALLEGATIONS**

17. At all times relevant hereto, Adrian is/was an interstate commercial motor carrier engaged in the business of interstate trucking, and was required to abide by and follow the Federal Motor Carrier Regulations, codified at 49 Code of Federal Regulations, Parts 40, and 325 through 399 as well as all applicable Illinois laws codified at 625 ILCS 5/1-100 through 625 ILCS 5/1-300.

18. At all times relevant hereto, Horne is/was an individual engaged in the business of truck driving and interstate trucking, and is/was required to abide by and follow the Federal Motor Carrier Regulations, codified at 49 Code of Federal Regulations, Parts 40, and 325 through 399 as well as all applicable Illinois laws codified at 625 ILCS 5/1-100 through 625 ILCS 5/1-300.

19. On or about August 24, 2015 at approximately 8:03 p.m., David Conway, deceased, was operating a 2014 Peterbuilt, bearing VIN # 1XP4DP9X3ED235859, southbound on Interstate 55 in Grundy County, IL at about Milepost 230.

20. On or about August 24, 2015 at approximately 8:03 p.m., Defendant Horne was operating a 2008 Peterbuilt, bearing VIN # 1XPWDU9X79D790679, and was pulling onto southbound Interstate 55 from a stopped position on the right shoulder, directly in front of David Conway, deceased, causing the vehicles to collide and causing serious injuries that resulted in David Conway's death on August 24, 2015.

21. That a violent collision occurred between the Peterbuilt being driven by David Conway, deceased, and the 2008 Peterbuilt being operated by Horne and Adrian.

22. David Conway, deceased, was not negligent in any way that would have caused or contributed to cause this collision.

23. Interstate 55 at the crash location is a much traveled, open, and publicly dedicated state highway, roadway, interstate and/or thoroughfare in the State of Illinois.

24. At all times relevant hereto, the 2008 Peterbuilt Horne was operating was displaying USDOT # 167586, a number registered with the United States Department of Transportation.

25. At all times relevant hereto, USDOT# 167586 was registered to Adrian.

26. At all times relevant hereto, Adrian and Horne were engaged in interstate commerce.

27. As an interstate motor carrier, Adrian is/was required to follow the Federal Motor Carrier Safety Regulations.

28. As a commercial motor vehicle operator, Horne is/was required to follow the Federal Motor Carrier Safety Regulations.

29. At all times relevant hereto, including at the time of this crash, Adrian is/was an interstate carrier with operating authority from the USDOT.

30. At all times relevant hereto, and at the time of this crash, Horne was an agent, servant, and/or employee of Adrian and he was operating Adrian's 2008 Peterbuilt at the time of this crash as Adrian's agent, servant and/or employee.

31. At all times relevant hereto, including at the time of this crash, Adrian was acting individually, and through its agents, servants, and/or employees, including Horne, each of whom were acting within the course and scope of their employment with Adrian.

32. At all times relevant hereto, including at the time of this crash, Adrian individually, and through its agents, servants, and/or employees were engaging in the business of an interstate motor carrier.

33. At all times relevant hereto, the 2008 Peterbuilt Horne was operating at the time of this crash, was owned, leased, and/or operated by Adrian, and was being operated by Horne in course and scope of his employment with Adrian.

34. At all times relevant hereto, Horne was hauling, pulling, and/or operating an Intermodal with the 2008 Peterbuilt he was operating.

35. At all times relevant hereto, the Intermodal Horne was hauling, pulling, and/or operating was owned, leased, and/or operated by Adrian, and was being hauled, pulled, and/or operated, by Horne in course and scope of his employment with Adrian.

36. At all times relevant hereto, both the 2008 Peterbuilt and the Intermodal detailed above, qualify as "Motor Vehicles", "Commercial Motor Vehicles", and/or a "Truck Tractor" as defined by the Federal Motor Carrier Regulations at 49 CFR Part 390.5.

37. At all times relevant hereto, Adrian and its agents, servants, and/or employees, including Horne, are/were required to operate the 2008 Peterbuilt and Intermodal with the "ordinary care".

38. At all times relevant hereto, Adrian and its agents, servants, and/or employees, including Horne, are/were required to operate the 2008 Peterbuilt and Intermodal with the "highest degree of care".

39. At all times relevant hereto, Adrian is/was required to operate its equipment and interstate motor carrier operation pursuant to the Federal Motor Carrier Safety Regulations.

40. At all times relevant hereto, Adrian and its agents, servants, and/or employees, were Required to operate pursuant to the rules and regulations contained and set forth in Title 49, Code of Federal Regulations, including but not limited to, the sections thereof set forth herein.

41. At all times relevant hereto, Adrian owned, controlled, and/or leased the 2008 Peterbuilt and Intermodal Horne was operating at the time of this crash.

42. At all times relevant hereto, Adrian was acting individually and through its agents, servants, and/or employees, including Horne.

43. At all times relevant hereto, and at the time of this crash, Horne was operating the tractor trailer, as an agent, servant, and/or employee of Adrian.

44. At all times relevant hereto, Horne was hired by Adrian to operate the 2008 Peterbuilt and Intermodal and directed by Adrian to transport freight interstate.

45. At all times relevant hereto, including at the time of this crash, Adrian individually, and/or through its agents, servants, and/or employees, owned, leased, controlled, and/or operated the 2008 Peterbuilt and Intermodal Horne was operating at the time of this crash.

46. At all times relevant hereto, including at the time of this crash, Horne caused or contributed to cause this collision, which directly and proximately caused the death of David Conway, deceased.

47. At all times relevant hereto, including at the time of this crash, Adrian, individually, and/or through its agents, servants, and/or employees, caused or contributed to cause this collision, which directly and proximately caused the death of David Conway, deceased.

48. The negligence of Adrian and the negligence of its agents, servants, and/or employees, including Horne, as described in this Complaint, directly and proximately, caused and/or contributed to cause the death of David Conway, deceased.

49. That immediately before this crash, David Conway, deceased, was an alive and healthy human being.

## COUNT I- WRONGFUL DEATH/NEGLIGENCE-
## AGENCY AS TO DEFENDANT ADRIAN CARRIERS

Plaintiff incorporates and realleges paragraphs 1-49 as if fully set forth herein and further for her Complaint against Defendant Adrian, Plaintiff Tammy Conway, as Special Administrator of the Estate of David Conway, deceased, alleges:

50. At all times relevant hereto, Adrian was operating as a for-hire interstate motor carrier.

51. At all times relevant hereto, including at the time of this crash, Adrian was acting individually and through its drivers, agents, servants, and/or employees, including Horne, each of whom were acting within the course and scope of their employment with Adrian.

52. At all times relevant hereto, including at the time of this crash, Horne was operating a tractor-trailer in the course and scope of his employment with Adrian.

53. At all times relevant hereto, including at the time of this crash, Horne was operating the 2008 Peterbuilt and Intermodal, in furtherance of the business interests of Adrian.

54. At all times relevant hereto, including at the time of this crash, Horne was hired by Adrian to drive the 2008 Peterbuilt and Adrian directed Horne to transport various loads of freight interstate, including in Illinois.

55. At all times relevant hereto, including at the time of this crash, Adrian, individually, and/or through its agents, servants, and/or employees, owned, leased, controlled, and/or operated the tractor-trailer Horne was driving at the time of this crash.

56. At all times relevant hereto, including the time leading up to this crash and at the time of this crash, Adrian owed a duty to the motoring public and others, to use ordinary care and/or the highest degree of care under the circumstances in operating the 2008 Peterbuilt and Intermodal, the hiring, training, supervising, retaining, and controlling its agents, servants, and/or employees, including Horne, in the following ways, which are imposed upon Adrian by the Federal Motor Carrier Safety Regulations:

    a. Adequately evaluating performance, including thorough training and supervision, so as to discharge any incompetent or negligent applicant, agent, servant, and/or employee before he/she injured the public or property;

    b. Properly screening its applicants, including for employment;

    c. Obtaining a completed employment application before permitting an agent, servant, and/or employee to operate a commercial motor vehicle under its authority;

    d. Investigating the agents, servants, and/or employees driver's employment records; and

    e. Inquiring into its agent's, servant's, and/or employee's driving record within 30 days after employment begins.

57. That leading up to this crash and at the time of this crash, Adrian failed to carry out the duties imposed upon it and was thereby negligent in the following respects:

    a.    Failed to make a reasonable inquiry and/or screen Horne's competence as a tractor trailer driver;

    b.    Selected Horne for employment, who was an incompetent and unfit driver;

    c.    Failed to select a competent and fit driver;

    d.    Hired and retained Horne, an unsafe and unqualified driver;

    e.    Hired and retained Horne, an inadequately trained and incompetent driver;

    f.    Allowed Horne to operate a mechanically defective tractor and Intermodal;

    g.    Allowed Horne to operate an unsafe tractor and Intermodal;

    h.    Entrusted the tractor and Intermodal to Horne, an incompetent, reckless, unsafe and unqualified driver;

    i.    Permitted Horne to operate the tractor trailer in excess of the hours of service provisions of Title 49, Code of Federal Regulations, Section 395;

    j.    Failed to properly train Horne in the proper operation, inspection, maintenance, record-keeping, and check-in, necessary for the safe operation of the tractor trailer and Intermodal he was operating at the time of this crash;

    k.    Failed to adequately evaluate Horne's performance through training and supervision, and failed to discharge Horne before he injured the general/motoring public;

    l.    Failed to obtain a completed employment application before permitting Horne to drive a commercial motor vehicle. 49 C.F.R. § 391.21;

    m.    Failed to investigate Horne's driver's employment record during the preceding three years by all reasonable means. 49 C.F.R. § 391.23(a)(2), 391.23(c);

    n.    Failed to inquire into Horne's driving record within 30 days after his employment began. 49 C.F.R. § 391.23(a);

o. Failed to properly instruct and train Horne how to properly and safely operate a commercial motor vehicle;

p. Failed to provide safety courses to Horne and its other agents, servants, and employees on how to safely operate and maintain the tractor trailer involved in this incident;

q. Failed to have in place a system to keep track of the on-duty status or otherwise audit the on-duty status records of Horne and its other employees that operate its vehicles in interstate commerce to ensure they did not violate the limitations of the "Hours of Service Limitations" set forth in 49 C. F.R., Part 395;

r. Failed to verify Horne's records of hours of service;

s. Permitted and/or failed to prevent Horne from operating commercial motor vehicles for periods in excess of industry standards for maximum hours of service;

t. Allowed Horne to operate a commercial motor vehicle in a fatigued condition and/or required, permitted, and/or failed to prevent Horne from operating a commercial motor vehicle when he was so impaired, or likely to become impaired, through fatigue, as to make it unsafe for him to begin or continue to operate their vehicles; and

u. Failed to implement drug screening procedures for and/or inquire of Horne to determine if the drugs he was ingesting into his system would adversely affect his ability to safely operate a commercial motor vehicle.

58. That Adrian knew or should have known that its acts and/or omissions stated herein created a danger of harm to David Conway, deceased, and others and because of its failures, acts and omissions, Adrian was thereby negligent.

59. As a direct and proximate result of one or more of the aforementioned acts or omissions of Adrian, David Conway, deceased, suffered serious injuries, which resulted in this death. As a result, Tammy Conway and the other next of kin of David Conway, deceased, have suffered great losses of a personal and pecuniary nature, including the loss of companionship and society of the decedent, loss of consortium, pecuniary loss, as well as extreme grief, sorrow and mental

suffering, subjecting Adrian to liability pursuant to 740 ILCS 180/1, *et seq.*, commonly referred to as the Wrongful Death Act.

60. As a direct and proximate result of one or more of the aforementioned acts or omissions of Adrian, David Conway, deceased, suffered serious injuries, which resulted in this death. As a result, David Conway's next of kin:

   a. Have been deprived of valuable services that David Conway, deceased, would normally perform for them and would have continued to perform for them, but for his death, all to the damage of David Conway's next of kin and/or Plaintiff as Special Administrator of the Estate of David Conway, deceased;

   b. Have been deprived of large sums of money and valuable services David Conway, deceased, normally contributed and rendered to them, all to the damage of David Conway's next of kin and/or Plaintiff as Special Administrator of the Estate of David Conway, deceased;

   c. Were all deprived of the society, the consortium, the love and the affection provided by the decedent prior to his death, all to the damage of David Conway's next of kin and/or Plaintiff as Special Administrator of the Estate of David Conway, deceased;

   d. Are entitled to any and all damages as detailed and provided for by 740 ILCS 180/1, commonly referred to as the Wrongful Death Act.

WHEREFORE, it is respectfully requested that judgment be entered under the terms of the Wrongful Death Act in favor of the Plaintiff, Tammy Conway, as Special Administrator of the Estate of David Conway, deceased, on behalf of the next of kin, against the Defendants, in an amount necessary to fully and fairly compensate the next of kin for their losses as described herein, including but not limited to pecuniary losses, loss of consortium, loss of companionship and society, grief, sorrow, mental suffering, and all damages provided for by 740 ILCS 180/1 (Wrongful Death Act), all of which substantially exceed the minimum jurisdictional amount, plus costs for this action and such further relief as the Court deems just and proper.

## COUNT II- WRONGFUL DEATH/NEGLIGENCE
## AGAINST DEFENDANT HORNE

Plaintiff incorporates and realleges paragraphs 1-54 as if fully set forth herein and further for her Complaint against Defendant Horne, Plaintiff Tammy Conway, as Special Administrator of the Estate of David Conway, deceased, alleges:

61. At all times relevant hereto, it was the duty of Horne to exercise ordinary care and/or the highest degree of care, under the circumstances then and there existing, in the operation of the 2008 Peterbuilt and Intermodal to protect the safety of David Conway, deceased, and others, all of which are imposed upon Horne by the Federal Motor Carrier Safety Regulations.

62. At all times relevant hereto, including the time leading up to this crash and at the time of this crash, Horne was negligent, reckless, and/or careless in the following respects, as Horne:

   a. Failed to maintain the 2008 Peterbuilt and Intermodal properly, which allowed the equipment to be operated in a condition that required it to be pulled over and stopped on the right shoulder of Interstate 55;

   b. Pulled the 2008 Peterbuilt and Intermodal over to the side of the highway when and where it was not safe to do so;

   c. Drove from the right shoulder of Interstate 55 onto the highway directly in front of David Conway, deceased, when it was not safe to do so;

   d. Failed to activate the four way electric signal to alert approaching traffic, including David Conway, deceased, of his location and intentions;

   e. Swerved in front of and/or into David Conway, deceased, when it was not safe to do so;

   f. Drove at a rate of speed which was slower than reasonable considering the circumstances then and there existing;

   g. Drove from the right hand shoulder onto the highway at a rate of speed which was slower than reasonable considering the traffic conditions;

   h. Failed to keep a careful lookout ahead, laterally ahead, and behind;

    i. Failed to take proper remedial action which could have avoided this collision or minimized the impact;

    j. Drove at an unsafe and dangerous rate of speed;

    k. Operated the 2008 Peterbuilt and Intermodal without adequate training and experience;

    l. Failed to have the 2008 Peterbuilt and Intermodal under proper control;

    m. Failed to avoid the collision;

    n. Drove overly aggressive;

    o. Operated the 2008 Peterbuilt and Intermodal when it was likely to cause an accident in violation of 49 CFR 396.7;

    p. Operated the 2008 Peterbuilt and Intermodal without the necessary training, knowledge and/or experience so as to make him a danger to others as imposed upon him by 49 CFR 383.110, including safe vehicle operation, poor vision, the effects of fatigue, general health of the commercial motor vehicle, visual search, vehicle inspections, basic vehicle control, safe operation skills, and pre-trip inspection skills;

    q. Failed to have the 2008 Peterbuilt and Intermodal under proper control;

    r. Operated the 2008 Peterbuilt and Intermodal while tired and/or fatigued in violation of 49 CFR 392.3; and

    s. Was otherwise generally careless and negligent.

63. Defendant Horne owed David Conway, deceased, a duty to operate the 2008 Peterbuilt and Intermodal in the manner that an ordinary prudent and cautious person in full possession of his/her faculties and using reasonable care would operate or drive a similar vehicle.

64. At all times relevant hereto, Defendant Horne was required to operate the 2008 Peterbuilt and Intermodal using ordinary of care and/or the highest degree of care due to the circumstances then and there existing.

65. That Horne knew or should have known that his acts and/or omissions stated herein created a danger of harm to David Conway, deceased, and others and because of his failures, acts and omissions, Horne was thereby negligent.

66. As a direct and proximate result of one or more of the aforementioned acts or omissions of Horne, David Conway, deceased, suffered serious injuries, which resulted in this death. As a result, Tammy Conway and the other next of kin of David Conway, deceased, have suffered great losses of a personal and pecuniary nature, including the loss of companionship and society of the decedent, loss of consortium, pecuniary loss, as well as extreme grief, sorrow and mental suffering, subjecting Adrian to liability pursuant to 740 ILCS 180/1, *et seq.*, commonly referred to as the Wrongful Death Act.

67. As a direct and proximate result of one or more of the aforementioned acts or omissions of Horne, David Conway, deceased, suffered serious injuries, which resulted in this death. As a result, David Conway's next of kin:

   a.   Have been deprived of valuable services that David Conway, deceased, would normally perform for them and would have continued to perform for them, but for his death, all to the damage of David Conway's next of kin and/or Plaintiff as Special Administrator of the Estate of David Conway, deceased;

   b.   Have been deprived of large sums of money and valuable services David Conway, deceased, normally contributed and rendered to them, all to the damage of David Conway's next of kin and/or Plaintiff as Special Administrator of the Estate of David Conway, deceased;

   c.   Were all deprived of the society, the consortium, the love and the affection provided by the decedent prior to his death, all to the damage of David Conway's next of kin and/or Plaintiff as Special Administrator of the Estate of David Conway, deceased;

   d.   Are entitled to any and all damages as detailed and provided for by 740 ILCS 180/1, commonly referred to as the Wrongful Death Act.

WHEREFORE, it is respectfully requested that judgment be entered under the terms of the Wrongful Death Act in favor of the Plaintiff, Tammy Conway, as Special Administrator of the Estate of David Conway, deceased, on behalf of the next of kin, against the Defendants, in an amount necessary to fully and fairly compensate the next of kin for their losses as described herein, including but not limited to pecuniary losses, loss of consortium, loss of companionship and society, grief, sorrow, mental suffering, and all damages provided for by 740 ILCS 180/1 (Wrongful Death Act), all of which substantially exceed the minimum jurisdictional amount, plus costs for this action and such further relief as the Court deems just and proper.

## COUNT III- WRONGFUL DEATH- NEGLIGENCE- VICAROUS LIABILITY SPECIAL ADMINISTRATOR OF THE ESTATE OF DAVID CONWAY v. ADRIAN CARRIERS, LLC

Plaintiff incorporates and realleges paragraphs 1 through 67 above as if fully set forth herein.

68. At all times relevant herein, Horne was an agent, servant, and/or employee, of Adrian.

69. At all times relevant herein, Horne was acting within the course and scope of his employment with Adrian, thereby subjecting Adrian to vicarious liability for Horne's negligence as alleged herein.

WHEREFORE, it is respectfully requested that judgment be entered under the terms of the Wrongful Death Act in favor of the Plaintiff, Tammy Conway, as Special Administrator of the Estate of David Conway, deceased, on behalf of the next of kin, against the Defendants, in an amount necessary to fully and fairly compensate the next of kin for their losses as described herein, including but not limited to pecuniary losses, loss of consortium, loss of companionship and society, grief, sorrow, mental suffering, and all damages provided for by 740 ILCS 180/1

(Wrongful Death Act), all of which substantially exceed the minimum jurisdictional amount, plus costs for this action and such further relief as the Court deems just and proper.

Respectfully Submitted,

PAGE LAW, LLC

_____
John J. Page, # 6314909
Ryan L. Bruning, # 6304640
Attorneys for Plaintiff
12166 Old Big Bend Rd. Ste. 100
Kirkwood, MO 63122
Office: 314-835-5800
E-Fax: 314-835-5853
john@pagelaw.com
ryan@pagelaw.com
Attorneys for Plaintiff